No. 25-671-cv

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

JIIN KO,

*Plaintiff-Appellee,*

*v.*

SWIFTLY SYSTEMS, INC., HENRY KIM,
LITTLER MELDELSON P.C., and JEAN SCHMIDT,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Southern District of New York
No. 25-cv-1833-KPF
Hon. Katherine Polk Failla

**DEFENDANTS-APPELLANTS' REPLY IN SUPPORT OF THEIR
EMERGENCY MOTION FOR A STAY OF PRELIMINARY INJUNCTION
PENDING APPEAL AND FOR AN ADMINISTRATIVE STAY**

Aaron M. Streett
Scott M. Nelson
Matthew M. Hilderbrand
BAKER BOTTS LLP
910 Louisiana Street
Houston, TX 77002-4995
Tel: 713.229.1234
Fax: 713.229.1522
aaron.streett@bakerbotts.com

*Attorneys for Defendants-Appellants
Swiftly Systems, Inc. and Henry Kim*

Jean L. Schmidt
Ivie A. Serioux
Sara A. Elgndy
LITTLER MENDELSON PC
900 Third Avenue
New York, NY 10022
Tel: 212.583.9600
Fax: 646.417.7534
jschmidt@littler.com

*Attorneys for Defendants-Appellants
Swiftly Systems, Inc., Henry Kim,
Littler Mendelson P.C., and Jean
Schmidt*

## TABLE OF CONTENTS

ARGUMENT .................................................................................................1

    **I.**    Swiftly is likely to succeed in its appeal of the preliminary injunction. .................................................................................1

    **II.**    Swiftly will suffer irreparable harm if forced to reinstate Ko. .............3

    **III.**    Ko faces no substantial injury if the preliminary injunction is stayed pending this appeal. ...................................................3

    **IV.**    The public interest is not served by forcing Ko upon Swiftly. .............4

    **V.**    An administrative stay is appropriate. ...................................................4

CONCLUSION .............................................................................................4

CERTIFICATE OF SERVICE .....................................................................6

CERTIFICATE OF COMPLIANCE ...........................................................7

## ARGUMENT

The Court should stay the district court's preliminary injunction.

## I. Swiftly is likely to succeed in its appeal of the preliminary injunction.

*First*, Ko does not cite a single case from this Court affirming a preliminary grant of reinstatement. Nor does it address or distinguish the numerous cases reversing such orders. Motion 9-10. A stay pending appeal is appropriate for this Court to consider whether this should be the first case in which "truly extraordinary circumstances" exist to overcome the strong general rule that reinstatement is improper. *See Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914 (2d Cir. 1986) (granting stay pending appeal of reinstatement order).

*Second*, the only case Ko does cite—*Mullins v. City of New York*, 626 F.3d 47 (2d Cir. 2010)—is not a reinstatement case and is otherwise facially distinguishable. Mot. 14-15. As Swiftly explained, in that case, the district court found that NYPD intimidated the plaintiffs from testifying in their overtime-wages case. *Mullins*, 626 F.3d at 55. In this case, there is absolutely no evidence that Swiftly has engaged in witness intimidation, much less of the plaintiff. That some of Ko's coworkers texted her that they do not want to get involved in this employment dispute comes nowhere close to the facts in *Mullins*.

Even the district court did not find *Mullins* applicable here. *See* Mar. 6, 2025 Tr. at 37:16-38:23 (Ex. I); Mar. 19, 2025 Tr. at 6:16-7:5 (Ex. L).

***Third***, Ko still does not explain how restoring her to the Chief People Officer role on a *temporary* basis—that is, pending this lawsuit—would "cure" any chill her former coworkers might feel, as she still faces the threat of losing this lawsuit. It does not as a matter of law. *See, E.G., Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 766 F.2d 715, 722 (2d Cir. 1985) (interim restatement is not likely to cure any chill); *Savage v. Gorski*, 850 F.2d 64 67–68 (2d Cir. 1988) (same); *Bennett v. Lucier*, 239 Fed. App. 639, 640 (2d Cir. 2007) (same); *Haynes v. Maldonado*, 2024 WL 1076557, at *6 n.3 (S.D.N.Y. Mar. 11, 2024) ("The Court also notes that a temporary order of reinstatement would likely not, as Plaintiffs' argument assumes, vitiate the alleged chilling effect, as . . . permanent discharge remains a possibility.").

Ko notes that some of these case pre-date *Mullins*, but *Mullins* came out differently because enjoining intimidation and discipline of *plaintiffs* necessarily cured the risk that those plaintiffs would drop out of the case. *Mullins* provides no support for the conclusion that temporarily reinstating a plaintiff cures a chill of *non*-plaintiffs. The district court's one-sentence "finding" on this point was pure *ipse dixit* with no supporting reasoning. This is yet another independent reason Swiftly is likely to succeed on appeal.

***Fourth***, Ko makes much ado of the (supposed) merits of her underlying case, but the merits of her employment claims are not at issue here. The question before the Court is whether Swiftly is likely to win its *appeal* of the preliminary injunction

order. *Bermudez v. Reid*, 720 F.2d 748, 750 (2d Cir. 1983). And on that point, there can be little doubt: *all* precedents favor Swiftly, and Ko has cited none in her favor.

Swiftly emphasizes that the district court ordered Swiftly to reinstate Ko to a sensitive position and pay her wages and benefits *before* Swiftly has had a chance to tell its side of the story. Swiftly has not even had a chance to answer the complaint. But as the evidence will show, there is no merit to Ko's underlying claims against any of the defendants. *See* Defendant's Letter to Plaintiff's Counsel (Ex. M).

## II. Swiftly will suffer irreparable harm if forced to reinstate Ko.

Swiftly will suffer irreparable harm if forced to reinstate Ko (1) to a position that no longer exists, and (2) particularly when the position is executive-level and would put Ko in charge of the company's handling of employment disputes—just like the one she has brought against the company.

Ko's primary response is that her salary ($355,000) and benefits paid "can be quantified." But she conspicuously does not concede that Swiftly may *recover* those as damages at the end of litigation. She has not cited any precedent, or even a cause of action, that would enable Swiftly to recover wages paid to Ko for her work during the time she was reinstated. These amounts are plainly unrecoverable, and thus Swiftly will suffer irreparable harm as a matter of law.

## III. Ko faces no substantial injury if the preliminary injunction is stayed pending this appeal.

Ko's argument for substantial injury during appeal turns exclusively on the

alleged chill to her co-workers. But as discussed above and in the Motion, this evidence is negligible and insufficient as a matter of law. As importantly, because the preliminary injunction does not cure the alleged chill of Ko's co-workers, staying the preliminary injunction by definition would not injure Ko.

## IV. The public interest is not served by forcing Ko upon Swiftly.

The public interest favors a stay. The district court's order sharply breaks from established precedent and the strong tradition of at-will employment. Denying the stay will not frustrate the vindication of employment and civil-rights laws. Ko's claim of chilling co-workers is legally insufficient, and any harms to Ko can be remedied if she prevails at trial.

## V. An administrative stay is appropriate.

Should the Court desire more time to consider the stay motion, it may grant a temporary administrative stay and request further briefing or oral argument.

## CONCLUSION

The Court should stay the preliminary injunction pending appeal.

Dated: March 26, 2025          Respectfully submitted,

/s/ *Aaron M. Streett*
Aaron M. Streett
Scott Nelson
Matthew M. Hilderbrand
BAKER BOTTS LLP
910 Louisiana Street
Houston, TX 77002-4995
Tel: 713.229.1234
Fax: 713.229.1522
aaron.streett@bakerbotts.com

*Attorneys for Defendants-Appellants*
*Swiftly Systems, Inc. and Henry Kim*

Jean L. Schmidt
Ivie A. Serioux
Sara A. Elgndy
LITTLER MENDELSON PC
900 Third Avenue
New York, NY 10022
Tel: 212.583.9600
Fax: 646.417.7534
jschmidt@littler.com

*Attorneys for Defendants-Appellants*
*Swiftly Systems, Inc., Henry Kim,*
*Littler Mendelson P.C., and Jean*
*Schmidt*

## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the above document was served on this the 26th day of March, 2025, via the Court's CM/ECF system on all counsel of record. Additionally, a true and correct copy of the foregoing was emailed to all counseled parties in accordance with Local Rule 25.2(g).

/s/ *Aaron M. Streett*
Aaron M. Streett

*Attorney for Defendants-Appellants*
*Swiftly Systems, Inc. and Henry Kim,*

## CERTIFICATE OF COMPLIANCE

1.    This reply complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 936 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

2.    This reply complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using the Microsoft Office Word software in 14-point Times New Roman font.

/s/ *Aaron M. Streett*
Aaron M. Streett

*Attorney for Defendants-Appellants*
*Swiftly Systems, Inc. and Henry Kim*

# EXHIBIT M



**Littler Mendelson, PC**
900 Third Avenue
New York, NY 10022.3298

Jean L. Schmidt
212.497.8486 direct
212.583.9600 main
646.417.7534 fax
jschmidt@littler.com

October 3, 2024

**VIA EMAIL (rkornblith@sanfordheisler.com)**

Russell Kornblith
Sanford Heisler Sharp McKnight
17 State Street, 37th Floor
New York, NY 10004

Re:    Claire Ko

Dear Russell:

On behalf of Swiftly, I write to respond to the claims asserted by Ms. Claire Ko in her September 5, 2024 email to Mr. Henry Kim and to follow up on our conversations regarding her claims.

As I previously advised you, Mr. Kim was shocked and confused by Ms. Ko's complaint. Swiftly has never taken any action based on Ms. Ko's gender or her race, nor has Swiftly retaliated against her because of any concerns she raised about Swiftly's accounting/revenue practices. To the contrary, Ms. Ko has received positive reviews, and on November 27, 2023, Mr. Kim gave Ms. Ko an additional equity grant of ███ options in recognition of her work. This grant more than doubled the initial grant of ███ options made on March 22, 2023 when she joined Swiftly. In many instances, Mr. Kim has thanked Ms. Ko for stepping in and doing more than was part of her job. In addition, when Ms. Ko came back from her vacation to Korea last year after visiting her parents, Mr. Kim suggested that she could potentially work in Korea for an entire Summer or Winter so that she could spend more time with her family. Mr. Kim wanted to show Ms. Ko that Swiftly valued her contributions and that the company would try to do its best to balance her workload with her outside-of-work commitments. Moreover, since her recent ER visits, Mr. Kim has tried to help Ms. Ko reduce her workload appropriately and alleviate some of her stress so that she could continue in her role.

When Mr. Kim received Ms. Ko's complaint, he took time to look into her allegations and then offered to meet with her to discuss them. On September 10, 2024 at 9:52 PM PST, Ms. Ko told Mr. Kim that she would meet with him. However, that turned out not to be true because at 9:30 AM PST on September 11 (the next morning), Mr. Kim received your September 11, 2024 letter

A213

Russell Kornblith
October 3, 2024
Page 2

threatening litigation and directing Mr. Kim to speak only to you, and not Ms. Ko, about her complaints.

In your September 11 letter you stated that if Swiftly was interested in a dialogue concerning settlement, you would send a follow-up letter describing Ms. Ko's claims in further detail. That same day, I sent you an email advising that we represented Swiftly and that Swiftly was willing to engage in discussions regarding the resolution of this matter, and asked you to send me the letter describing Ms. Ko's claims that you referred to in your letter.

On September 12, 2024, I spoke with you and told you that Mr. Kim would like to resolve this promptly and asked you what Ms. Ko was looking for and what she wanted to happen differently. You said that you would put that in the letter which would provide more context for her claims. I asked if Ms. Ko wanted to leave Swiftly and you said she was not sure. I also said that Mr. Kim would like to resolve this quickly so that he could continue to work with Ms. Ko and asked when you would send the letter. You said that you would do it as quickly as possible.

Since September 12, I have followed up with you multiple times to ask when you would provide what you referred to as "a more fulsome writeup of Ms. Ko's claims" and her demand as you agreed to do. However, as of today, you still have not said when you will provide the letter and are still not able to tell me what Ms. Ko wants.

As noted above, when Ms. Ko complained to Mr. Kim on September 5, 2024, her complaints were investigated, and we had prepared a response which he intended to send to her and discuss with her when they met. Once we received your letter and you indicated that you had more details and a lot of documents to support her claims, I decided it was best to wait to respond. However, given that it has been four weeks since Ms. Ko complained and we still have not received anything from you or Ms. Ko, we are writing to provide Swiftly's response so that this matter can be resolved.

**Ms. Ko's Complaint**

Performance Review Process
Mr. Turner never told any of his team that Ms. Ko was the reason that Swiftly was not able to offer higher ratings and/or merit increases. The engineering team may still feel a lot of blowback from what happened when Mr. Tang and/or Mr. Held was in the CTO role and decreased people's reviews unilaterally. Mr. Held apparently told a number of the team members that he was forced to stack rank the employees and decrease people's ratings because we did not have merit increase budget to make available for the employees.

However, Mr. Turner never blamed Ms. Ko or HR for not being able to offer merit increases. He was very clear with his team that the merit budget was determined by the overall financial

A214

Russell Kornblith
October 3, 2024
Page 3

situation of the company and that the biggest driver for the merit budget was whether or not the company was making its predicted revenues.

Mr. Turner mentioned your name regarding performance reviews when he mentioned that HR had alerted him to the fact that all of ▆ had the same rating and this seemed strange given that as a company Swiftly was not happy with its quality. Mr. Turner pushed on the ▆ Manager, ▆, regarding the ratings, but ultimately did not force the ▆ manager to change any of his team's ratings.

If there are individuals who have told Ms. Ko that she was the reason Swiftly is not able to offer higher ratings and/or merit increases, please let me know because Mr. Kim wants to be sure that this inaccurate perception is corrected, and people understand Swiftly's process for merit increases and what determines those increases.

Retaliation
Ms. Ko is not being retaliated against because she raised concerns about Swiftly's accounting/ revenue and reimbursement practices. Mr. Kim has always appreciated Ms. Ko's oversight on accounting and revenue matters. While Mr. Turner may sometimes disagree with Swiftly's receipt policy, both Mr. Kim and Mr. Turner are appreciative that Ms. Ko was watching the bottom line and trying to contain Swiftly's expenses. When credit card statements were provided instead of receipts, Ms. Ko sought board member approval for expense reimbursement to ensure that there was proper oversight of the expense reimbursement process.

Mr. Kim and Mr. Turner could not identify any reports from Ms. Ko regarding accounting/revenue practices that she disagrees with or believes are improper. In fact, Swiftly's finance team reports to Ms. Ko, and Ms. Ko has been leading and overseeing the company's audit with its outside auditor, Deloitte.

Ms. Ko's Responsibilities Being Taken Away
COO and CFO Searches
- Ms. Ko has not been excluded from the searches for the COO and CFO positions. She received introductions to interview all of the same COO and CFO candidates that Mr. James and Mr. Berger have.

- Mr. Kim is running these searches with the search firm which is the normal pattern and practice for a C level executive hire that will report to the CEO. In fact the search firm told Mr. Kim that in the executive searches they perform, the CEO is typically leading the search because the positions report to the CEO. Consequently, Mr. Kim has taken the lead role. This clearly has nothing to do with Ms. Ko's gender or her race. Nor is it retaliatory.

Russell Kornblith
October 3, 2024
Page 4

- Regarding Mr. Berger's role with respect to the search firm, he was involved in Mr. Kim's initial meeting with the search firm only because he made the introduction to the search firm. As Ms. Ko should know, Mr. Kim reached out to Ms. Ko first via text on June 19, 2024 at 8:01 AM PST and asked her if she had any contacts with Daversa Partners, the search firm. She stated, "I don't think I know anyone here. I have never worked with them... It seems like you have recommended to use Daversa so let's try that." At that point, Mr. Kim asked Mr. Berger if he knew someone at Daversa. On June 20, 2024, Mr. Berger reached out to a friend at a VC firm and got an introduction to Daversa. When Mr. Kim was in New York City in July, Mr. Berger attended one meeting with Mr. Kim at Baker Botts Office on July 10, so Mr. Berger could formally introduce Mr. Kim to the partner of Daversa. Mr. Berger has not been involved in any further meetings beyond that initial introductory meeting. It should be noted that Mr. Kim explained all of this to Ms. Ko when she asked him why Mr. Berger attended the meeting and Mr. Kim assured Ms. Ko that he was not trying to and did not leave her out of the process. In fact, on July 23, 2024, Mr. Kim emailed Ms. Ko, Mr. Turner, and Mr. Berger the password to his Daversa Portal account so they could participate in the search.

Search for ███████, our VP of Engineering.
- Mr. Turner has a relationship with ███████ going back 15 years. Mr. Turner was not trying to exclude Ms. Ko from the search. Instead, he was trying to leverage his personal relationship with ███████ to obtain the best talent at the best price. As a result of that personnel relationship, Swiftly was able to hire a leader with a much longer career history and better company pedigree than ███████ for significantly less compensation.

Revenue War Room Meetings
- Ms. Ko was not asked to stop attending these meetings. To the contrary, Ms. Ko has always been invited to attend every meeting, and to this day is still invited to every meeting and is always welcome to attend. And indeed has attended regularly. After Ms. Ko was hospitalized for stress, her attendance at the meeting was marked as "optional," meaning she did not have to attend, because Swiftly was trying to reduce her workload. As Ms. Ko will recall, Mr. James called her to explain that he was making this meeting optional for her as a way to reduce her workload, understanding that the meeting is scheduled for a time that is difficult for east coast attendees (i.e., 8 – 10 p.m.) and the meeting most directly effects sales and marketing and not either HR or finance. It is truly puzzling why Ms. Ko would view this attempt by Swiftly to help her reduce her stress as a negative action against her, particularly because whether or not she attended the meetings was totally within her control. In fact, Ms. Ko has continued to attend some of these meetings since she alleged she was removed from the meeting.

Russell Kornblith
October 3, 2024
Page 5

Resignations
- Ms. Ko was asked not to speak to Ms. Fernandez because Mr. Kim wanted to limit the interactions with Ms. Fernandez and the efforts to retain her to those individuals within the company that had the closest relationship with her, *i.e.* Mr. Turner and Mr. Kim. Ms. Fernandez was thinking about joining a three person company and Mr. Kim and Mr. Turner felt that they, as the founders, had the best shot at persuading her not to do join a small startup as they spoke from experience.

- ████████ asked that her resignation and her meeting with Mr. Kim not be disclosed to anyone else as she did not want rumors to swirl within the company. Mr. Kim went to meet with ████████ in ████████ first and ████████ wanted some time to reconsider leaving before finalizing her decision.

Mr. Berger's Role
- Ms. Ko complained that Mr. Kim's asking Mr. Berger to obtain employment and personnel data from her was treating her as if she were Mr. Kim's secretary. To the contrary. Mr. Kim asked Mr. Berger to obtain employment and personnel data from Ms. Ko because she is the head of HR. Ms. Ko was the holder of that information and so he could only obtain that information from her.

- In her complaint, Ms. Ko states that she feels that she is being unfairly marginalized in favor of Mr. Berger, a younger, white male colleague. That is absolutely not the case. Contrary to Ms. Ko's claims, Mr. Berger is not managing resignations, selecting recruiting agencies and handling employee complaints.

In short, Ms. Ko is not being marginalized and Mr. Berger is not taking over her job duties. Nor is Ms. Ko being discriminated against. It is important to note that, as Ms. Ko stated in her email, Ms. Ko took on additional responsibilities beyond those of a CHRO, and Swiftly is grateful that she did so. However, those responsibilities are now being properly taken off her plate – both because they are not part of her job and also because Swiftly wants to be sure that Ms. Ko's workload is appropriate.

Regarding your statement in your October 2 email that Mr. Kim is taking away some of her responsibilities, attached are emails showing that Mr. Kim is in fact involving her in everything related to her role as CHRO.

As set forth above, it is our position that there is nothing to substantiate Ms. Ko's claims that she is being discriminated against based on her gender and race or her claim that she is being retaliated against. If you disagree, please let me know and provide us with information/ documents to substantiate her complaints/allegations by this Monday, October 7, 2024, so that

Russell Kornblith
October 3, 2024
Page 6


we have the opportunity to address them and try to reach a resolution. Otherwise, we will consider this matter resolved.

Finally, I have asked you several times what Ms. Ko is looking for and you said that she was not sure. However, on several occasions you have mentioned separation of employment for Ms. Ko. If Ms Ko would like to leave Swiftly, please let me know so we can discuss that.

Regards,

/s/ Jean

Jean L. Schmidt

Enclosures

A218

**From:** Claire Ko <claire@swiftly.com>
**Sent:** Thursday, September 26, 2024 8:14 AM
**To:** Alasdair James <ajames@swiftly.com>; Henry Kim <henry@swiftly.com>
**Cc:** Ankit Jain <ajain@swiftly.com>
**Subject:** Re: Ankit Jain shared "240701 DCA ███████ ProfitLoss Estimate" with you

Hi Alasdair & Henry,

I think you may have missed the attached email from yesterday regarding this topic.
I will use Henry's email as an approval to go ahead and initiate the offer for Russell.

Thank you.

---

**From:** Alasdair James <ajames@swiftly.com>
**Sent:** Thursday, September 26, 2024 2:11 AM
**To:** Henry Kim <henry@swiftly.com>; Claire Ko <claire@swiftly.com>
**Cc:** Ankit Jain <ajain@swiftly.com>
**Subject:** Re: Ankit Jain shared "240701 DCA ███████ ProfitLoss Estimate" with you

Excellent. thanks



**Alasdair James**
**Chief Commercial & Marketing Officer**

Ajames@swiftly.com | 847.217.6499

A219

**From:** Henry Kim <henry@swiftly.com>
**Date:** Wednesday, September 25, 2024 at 7:43 PM
**To:** Alasdair James <ajames@swiftly.com>, Claire Ko <claire@swiftly.com>
**Cc:** Ankit Jain <ajain@swiftly.com>
**Subject:** Re: Ankit Jain shared "240701 DCA ███████ ProfitLoss Estimate" with you

Thanks AJ and Ankit. Approved.

---

**From:** Alasdair James <ajames@swiftly.com>
**Sent:** Wednesday, September 25, 2024 7:27 PM
**To:** Henry Kim <henry@swiftly.com>; Claire Ko <claire@swiftly.com>
**Cc:** Ankit Jain <ajain@swiftly.com>
**Subject:** FW: Ankit Jain shared "240701 DCA ██████ ProfitLoss Estimate" with you

Henry and Claire

Neither of you were at War Room this evening so we were not able to talk you through the attached spreadsheet in support of repositioning the offshore analytics role dedicated to ████████ AO, to an onshore analytics role for ██████████.

████████ has become a blocker simply because of the limit to her time. She needs a credible number two that can meet with retailers, explain our data and analytics methodologies credibly, help retailers to decipher the problems they're trying to address and build campaigns that make sense for them. The ████████ teammates she has already are all credible members of the team but do not understand ████████ and are not able to lead a discussion with them on the subject matter.

If we make this change it takes the original ███ P&L from ████████ if we don't make any additional revenue. It's our belief that by making this change it will free ██████ up to work on many other areas which will result in revenue growth, but as we are unable to prove that Ankit hasn't modelled it.

There was universal support for this hire.

If you have any questions please let me know, but ████████ has interviewed a guy called ████████ who has very unique skills and experiences with both retail and CPG in his background, and she'd like to make an offer sooner than later so as not to lose him.

Thanks

AJ



**Alasdair James**
**Chief Commercial & Marketing Officer**

Ajames@swiftly.com | 847.217.6499

**From:** Ankit Jain <ajain@swiftly.com>
**Date:** Wednesday, September 25, 2024 at 6:44 PM
**To:** Alasdair James <ajames@swiftly.com>
**Subject:** Ankit Jain shared "240701 DCA ███████ ProfitLoss Estimate" with you



## Ankit Jain invited you to view a file

Spreadsheet that outlines impact of hiring the analytics lead (row 37) of tab "Overview 240925"



240701 DCA ███████ ProfitLoss Estimate

🔒 This invite will only work for you and people with existing access.

Open Share

🛒 SWIFTLY

This email is generated through Swiftly Systems's use of Microsoft 365 and may contain content that is controlled by Swiftly Systems.

---

**From:** Claire Ko <claire@swiftly.com>
**Sent:** Friday, September 20, 2024 4:58 PM
**To:** Henry Kim <henry@swiftly.com>; Alasdair James <ajames@swiftly.com>
**Subject:** Re: ▇▇▇▇▇ plan

Hi Henry,

Thank you for clarifying that.
Any payment we agree to give, we should pay that as "severance".
I will wait for your confirmation to draft the separation agreement.

Thank you

---

**From:** Henry Kim <henry@swiftly.com>
**Sent:** Friday, September 20, 2024 7:35 PM
**To:** Claire Ko <claire@swiftly.com>; Alasdair James <ajames@swiftly.com>
**Subject:** Re: ▇▇▇▇▇ plan

Hi Claire,

He did use the word "stipend."  So, I used the word Stipend to him as well.  I let him know that "severance" would be lower than ▇▇▇▇▇ and he said the insurance was really important to him and he understood on the "stipend"/severance side.  Let me chat with Brian and Tad, and I will get back to you next week.

Regards,
Henry

---

**From:** Claire Ko <claire@swiftly.com>
**Sent:** Friday, September 20, 2024 4:28 PM
**To:** Henry Kim <henry@swiftly.com>; Alasdair James <ajames@swiftly.com>
**Subject:** Re: ▇▇▇▇▇ plan

Hi Henry,

I will prepare for his offboarding on ███████.

AJ: Let's connect to discuss the transition plan and the new reporting structure. ███ is also a hiring manager for the VP of Customer Success search, it may make sense to have you take over, so we don't need to change the hiring manager during the recruitment process.

Henry: Did Dan specifically ask for "stipend"? Stipend may not be the right pay arrangement after termination. I recommend offering him a severance of █ months and COBRA reimbursement until the end of this year. If his last day is 10/11, his benefit will continue until ████. This means we will end up offering █ months of fully paid COBRA plus ██████ of salary which will be paid out to him in lumpsum.

Please let me know if you have any questions.
Thank you.

---

**From:** Henry Kim <henry@swiftly.com>
**Sent:** Friday, September 20, 2024 2:49 PM
**To:** Claire Ko <claire@swiftly.com>; Alasdair James <ajames@swiftly.com>
**Subject:** ███████ plan

Hi Claire,

I have been chatting with ███ regarding an exit date. We have decided on 10/11 as his last official day here. Since AJ will be working with his team post ███ and pre new COO (not sure how much gap there will be but we will try to minimize), AJ is talking to ███ about a communication plan to his team.

███ has asked for health care until the end of the year. He also asked for some "stipend." Could you please let me know what you think is a fair stipend that I can take to the board to get approved? Thank you.

Regards,
Henry

**From:** Claire Ko <claire@swiftly.com>
**Sent:** Thursday, September 26, 2024 8:48 AM
**To:** Henry Kim <henry@swiftly.com>
**Cc:** Sean Turner <seturner@swiftly.com>
**Subject:** Re: Data Engineers Recruitment

Hi Sean,

Do we have updates?
Please advise.
Thank you.

**From:** Claire Ko <claire@swiftly.com>
**Sent:** Wednesday, September 25, 2024 2:33 PM
**To:** Henry Kim <henry@swiftly.com>
**Cc:** Sean Turner <seturner@swiftly.com>
**Subject:** Re: Data Engineers Recruitment

Thank you for the updates.
I look forward to hearing from Sean.

**From:** Henry Kim <henry@swiftly.com>
**Sent:** Wednesday, September 25, 2024 2:12 PM
**To:** Claire Ko <claire@swiftly.com>
**Cc:** Sean Turner <seturner@swiftly.com>
**Subject:** Re: Data Engineers Recruitment

Hi Claire,

Sean is chatting with ███ at 1 pm
PST today. He should have an answer then.

Regards,
Henry

A224

On Sep 20, 2024, at 8:40 PM, Henry Kim <henry@swiftly.com> wrote:

 Hi Claire. I spoke with Sean tonight about this. He said that ███ will call him this weekend and we should have an answer by Monday.

Regards,
Henry


On Sep 20, 2024, at 5:04 PM, Claire Ko <claire@swiftly.com> wrote:


Hi Sean,

I am following up with you as I have not heard back from you.
Please let me know if you heard back from ███ yet.
Will he be returning with ███ and ███ ?

Please confirm.
Thank you.

---

**From:** Henry Kim <henry@swiftly.com>
**Sent:** Wednesday, September 18, 2024 3:53 PM
**To:** Claire Ko <claire@swiftly.com>; Sean Turner <seturner@swiftly.com>
**Subject:** Re: Data Engineers Recruitment

Sean—please get back to Claire as soon as possible.  We need to make some decisions here.  Do you want me to talk to ███ ?

Regards,
Henry

---

**From:** Claire Ko <claire@swiftly.com>
**Sent:** Tuesday, September 17, 2024 6:59 PM
**To:** Sean Turner <seturner@swiftly.com>
**Cc:** Henry Kim <henry@swiftly.com>
**Subject:** Re: Data Engineers Recruitment

Hi Sean,

I would like to follow up with you as we continue to delay hiring a

Senior Data Engineer.

Mike S has someone he can move forward with, I am afraid we will lose this candidate if we don't move forward soon.

Do we have a confirmation from ██ and ██ that they will join us?

Please advise.

Thank you.

---

**From:** Sean Turner <seturner@swiftly.com>
**Sent:** Friday, September 13, 2024 5:22 AM
**To:** Claire Ko <claire@swiftly.com>
**Subject:** Re: Data Engineers Recruitment

Larry talked to ██ this week. Let me get a debrief from him tomorrow.

I think ██ and ██ work at the same company (it's a law firm). ██ works for ██ and will only follow ██ . ██ I think is somewhere else and is not with the other two.

Let me try to get a final decision from ██ this weekend.

Thank you!

Sean

---

**From:** Claire Ko <claire@swiftly.com>
**Sent:** Thursday, September 12, 2024 8:03:51 AM
**To:** Sean Turner <seturner@swiftly.com>
**Subject:** Data Engineers Recruitment

Hi Sean,

I am still waiting to hear back from you regarding the rehiring of ████████ .

Mike S is ready to move forward with a candidate we found.

We had two positions open, if you plan to bring ██████ and ██ back, we don't have an opening.

Please advise asap so we don't lose this candidate.

Thank you.

A226

<Outlook-45flgppw.png> **Claire Ko**
Chief People Officer

swiftly.com |917.817.2110

<Outlook-45flgppw.png>

---

**From:** Henry Kim <henry@swiftly.com>
**Sent:** Tuesday, October 1, 2024 2:48 PM
**To:** Claire Ko <claire@swiftly.com>
**Cc:** Sean Turner <seturner@swiftly.com>
**Subject:** Re: ████████████

Hi Claire,

If you and Sean are good with this, it is approved.  I have not spoken with ████ (and I do not know of her ranking, etc.), and when Sean suggested this increase, I asked him to connect with you.

Regards,
Henry

---

**From:** Claire Ko <claire@swiftly.com>
**Sent:** Tuesday, October 1, 2024 8:57 AM
**To:** Henry Kim <henry@swiftly.com>
**Cc:** Sean Turner <seturner@swiftly.com>
**Subject:** Re: ████████████

Hi Henry,

I need your approval in writing so I can process the increase in payroll.
The earliest effective date will be 10/1 as everyone received their pay today already.

Sean: I see your meeting invite to discuss ████████████ pay increase.
I believe this is already approved by you and Henry, we can certainly discuss further and align ourselves on how we want to handle pay increases going forward.

Thank you.

---

**From:** Henry Kim <henry@swiftly.com>

A228

**Sent:** Monday, September 30, 2024 5:51 PM
**To:** Claire Ko <claire@swiftly.com>
**Cc:** Sean Turner <seturner@swiftly.com>
**Subject:** Re: ███████████

+Sean

Hi Claire—thanks for your email. Sean brought this up to my attention sometime last week and I asked him to sync with you on this. From my recollection, Sean mentioned that ████ had another offer?

Sean—per our conversation last week, please involve Claire in all employee matters. Thanks.

Regards,
Henry

---

**From:** Claire Ko <claire@swiftly.com>
**Sent:** Monday, September 30, 2024 2:11 PM
**To:** Henry Kim <henry@swiftly.com>
**Subject:** ███████████

Hi Henry,

Hope you're doing well. Talia informed me that you've approved an additional pay increase for ████████████████, along with ███████████. As ████ had already received a merit-based pay adjustment to █████, effective 9/1/2024, I wanted to clarify whether this new increase is tied to a promotion or another merit adjustment. Can you also confirm that this additional increase will be effective 10/1/2024?

In the past, I've always been involved in decisions around compensation changes, and I believe it's important to stay aligned on these decisions. Could you or Sean please ensure that we touch base prior to finalizing such approvals to maintain clear communication moving forward? I've had some difficulty reaching Sean, so it would be helpful to discuss this directly.

If there has been a shift in the process or if I am no longer expected to be part of these decisions, please let me know so we can align on the best way to proceed.

Thank you,
Claire



**Claire Ko**
Chief People Officer

swiftly.com |917.817.2110

**From:** Henry Kim <henry@swiftly.com>
**Sent:** Friday, September 13, 2024 3:51 PM
**To:** Claire Ko <claire@swiftly.com>
**Subject:** Re: ████████ - Equity

Thank you very much

**From:** Claire Ko <claire@swiftly.com>
**Sent:** Friday, September 13, 2024 3:51 PM
**To:** Henry Kim <henry@swiftly.com>
**Subject:** Re: ████████ - Equity

Hi Henry,

I just spoke to ████, he appreciates the additional grant.
I will send him a letter to confirm his new shares and include this in the list for the board.
Thank you

**From:** Henry Kim <henry@swiftly.com>
**Sent:** Friday, September 13, 2024 5:33 PM
**To:** Claire Ko <claire@swiftly.com>
**Subject:** Re: ████████ - Equity

Yes. Please feel free to communicate to him. He was waiting to hear from me, but please tell him that if he and you are good with this, I am good as well. Thank you.
Sent from my iPhone

> On Sep 13, 2024, at 2:23 PM, Claire Ko <claire@swiftly.com> wrote:

Thank you for the clarification, that was not my understanding when I spoke

to █ .

I will make sure to get these new shares vest immediately.

I am meeting him later today, is it okay for me to communicate his new shares?

---

**From:** Henry Kim <henry@swiftly.com>
**Sent:** Friday, September 13, 2024 5:20 PM
**To:** Claire Ko <claire@swiftly.com>
**Subject:** Re: █████ - Equity

Hi Claire,

We cannot back date options.  But, that should not really matter in this case because there is no vesting on these options.  It should be treated like a bonus payment (for work done) and should vest immediately as it was a part of his bonus.  Thank you.

Regards,
Henry

---

**From:** Claire Ko <claire@swiftly.com>
**Sent:** Friday, September 13, 2024 2:18 PM
**To:** Henry Kim <henry@swiftly.com>
**Subject:** Re: █████ - Equity

Hi Henry,

Thank you for the confirmation. I used the █████ for my calculation.

I will draft a letter to confirm his new █████████ .

█ asked if the grant date can be backdated to March 2023, I told him that may not be possible.  I told him it will most likely be effective 9/1/2024, but please let me know if you would like to backdate the grant date to earlier this year.

Thank you.

---

**From:** Henry Kim <henry@swiftly.com>
**Sent:** Friday, September 13, 2024 5:09 PM
**To:** Claire Ko <claire@swiftly.com>
**Subject:** Re: █████ - Equity

A232

Hi Claire,

He reached out to me last week to discuss this piece.  I ran the math and I am getting something slightly different:



Regards,
Henry

_____

**From:** Claire Ko <claire@swiftly.com>
**Sent:** Friday, September 13, 2024 3:31 PM
**To:** Henry Kim <henry@swiftly.com>
**Subject:** ██████ - Equity

Hi Henry,

██ has followed up with me on the equity he was promised to receive from closing ██████████. 
His commission potential was ██████ and he only received ██████ as you promised to give him additional ████████████████████. 
I would like to follow up with you as you were going to advise how much ██████████ we should ██████████.

Based on the amount he was due; we will need to offer ████████████. 
Please advise if we can add this to the list for a board approval. 
Thank you.

&lt;Outlook-poiwuxdm.png&gt;

**Claire Ko**
Chief People Officer

swiftly.com |917.817.2110